UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                      CRIMINAL NO. 17-20574

v.                                  HON. VICTORIA A. ROBERTS

JOSE GREGORIO TORRES,

      Defendant.

_____/

## Government's Sentencing Memorandum

This case is not about the number of child pornography images that Defendant Jose Torres convinced MV-1 to make for him. This case is about Torres's lengthy, manipulative, criminal behavior toward a fourteen year old girl. Defendant Jose Torres stands convicted of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). For the reasons stated in this memorandum, the government believes a sentence of **135 - 168 months'** imprisonment is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

MV-1's mother plans on attending the sentencing hearing, and intends to exercise her right to be heard under the Crime Victims' Rights Act.

I.      **Facts and Procedural History**

Between the end of August and November 2015, 37 year-old Torres (using the name "Kalel"[1]) and fourteen year old MV-1 exchanged at least approximately 28,000 text messages with each other – at an average of 285 text messages per day.[2] But the texts themselves show that Defendant had communicated with MV-1 before the end of August, and that they also communicated through other means beyond text messaging. This included video chatting and phone conversations, where Defendant encouraged MV-1 to masturbate, which she did, for Defendant.

From Defendant's perspective, the text messages had a clear goal: entice and coerce this child to engage in sexually explicit conduct for the purpose of making videos and pictures for him. For example:

- Torres: "Like you said you are still learning because yes, you pretty mature for your age, but because you have never been in a relationship again because of your age!"
- Torres: "If we had a daughter like u i will be so so happy."
- *[MV-1 sends an image of herself dressed in a pink tank top shirt, wearing blue short shorts with pink trim.]*
- Torres: "...Baby you look amazing...As you can see I wasn't expecting

---

[1] Of all the names in the universe, Defendant chose the screen name "Kalel," the same name as his deceased baby that died in infancy.
[2] The full chat log is over 1,300 pages, but can be made available to the Court upon request. For ease of reading, some of the spelling and grammar errors have been corrected from the original.

any pics now."

- MV-1: "I thought you expected pics everyday."

- Torres: "well yes...But...I wasn't gonna ask now...Cuz me wanted not to bug u so much about pics...Your pics mean so much for me."

- Torres: "I can't wait for you and me to be together."

- *[MV-1 sends an image of herself dressed in a pink tank top shirt, wearing blue short shorts with pink trim.]*

- Torres: "Baby you are prettier plus you are special and super cute and you know it.  Plus, there's lots of girls that are jealous of you especially because of your big breasts so come on."

- Torres: "Baby plzz promise me that you will not forget about how you was before.  The times you have been super friendly you can't and you are not that girl anymore because you are not single anymore, okay?"

- Torres: "Remember that... Don't repeat those mistakes there in high school."

- Torres: "When you go take a shower! I want you to lay in the bathtub all naked and open your legs so wide and I want you to think of a lot of dirty stuffs while you record yourself masturbating -  meaning you are rubbing your clit and fingering your pussy for your master! You think you are that dirty? You think you can do this I so dare you."

- MV-1: "No no no no no"
- Torres: "Why"
- MV-1: "Cause no - me not ready for that yet"
- Torres: "I bet i can make you...You want me to make you...Do you think I can make you?..So you won't do it no matter...Meaning even if you lost me...Then you already lost me then."
- MV-1: "If I'm gonna lose for something like that then that's messed up and doesn't show love is true...if you threatening our relationship for that it's so messed up Kal, I thought you were better than that wow just wow ughhhhhhhh...I'm gonna go shower and I'm not doing anything like that...really?!??! If you planning on making me by saying me gonna lose you that's fucked up..."
- Torres: "This right now is not about that I want to see you; this is more about how far you let it go now! . . ."
- Torres: "...You do as farthest as you can plz..."
- *[MV-1 sends Defendant 7 photographs, described below]*:
    - Image one appears to be a photograph of MV-1's bottom, which is covered with blue underwear. The photograph is taken from below MV-1.
    - Image two depicts MV-1 wearing a black camisole and blue

- underwear. The image is taken in a bathroom.
    - Image three depicts MV-1 from her waist to approximately her knee, and is taken from behind. MV-1 is wearing the same black camisole and blue underwear as depicted in image two.
    - Image four depicts MV-1 from her mid thigh to navel. MV-1 is completely nude, and appears to be masturbating.
    - Image five depicts a MV-1 from her neck to breast area. What appears to be a bra is pulled down exposing her breasts.
    - Image six is a close up view of a MV-1's groin area. MV-1 is wearing blue underwear similar to that described in images one, two, and three.
    - Image seven depicts a close up view of a MV-1's groin area. MV-1 appears completely nude, the focus of the image is on her vagina.
- Torres: "So you do remember you said you will do anything for me?! Can explain what does that means and if it has a limit?"
- MV-1: "Well yes and by anything I meant what I gotta do to make you happy and I'm not ready to send any "special" videos or pics that all I mean yea I did it yesterday but some days I may not be able some days I will but that's all really."

- o Torres: "You letting anyone else do you and kiss you and fuck you? You have to show me how bad you love me . . ."

- o Torres: ". . . the only dick going in you is and will only be mines but kiss you and taste you like eat your pussy and your ass that yes if you have too."

- o MV-1: "Kal I'm sorry I don't even want anyone else to see my body I only devote it to my husband not anyone else."

Law enforcement tracked down "Kalel," and attempted to interview him. When they presented themselves at the door, Defendant's wife lied to law enforcement and stated that Defendant was not there because he lived in another city. Then, Defendant appeared in the doorway and briefly spoke with law enforcement.

Defendant lived in the house with his wife, and their three young children, ages 7, 10, and 13. Defendant admitted to knowing MV-1's true age and texting with her. He claimed that she initially lied about her age (though MV-1 said otherwise), and that he only talked with her for a month (also, not true). He did admit, however, that he knew MV-1 came from a very strict, conservative religious background, and had difficulty understanding how to date/navigate romantic relationships due to her strict religious culture. Defendant denied talking to any other minor online, and refused to allow agents to look at his phone or electronic devices.

On November 20, 2017, Defendant pleaded guilty to online enticement of a child, under a Rule 11 plea agreement. The presentence report calculated his guideline range to be 135 - 168 months' imprisonment, which was the same as the Rule 11 plea agreement. Neither party objected to the guideline calculations.

This Court set sentencing for March 13, 2018, at 2:30 p.m.

## II.     The factors under 18 U.S.C. § 3553(a) warrant a 135 - 168 month sentence.

### A. The nature and circumstances of the offense

This defendant repeatedly took advantage of MV-1's vulnerabilities, including her young age, and enticed her into a twisted, online sexual relationship. In his sentencing memorandum, Defendant brushes off the seriousness of this offense by repeatedly stating that this case is about "**THREE** nude photographs." (R.13: Def. Mem. at PgID 54) (emphasis in original). But even if this case were only about child pornography photos (it is not), just one picture would qualify Defendant for a fifteen year mandatory minimum. So while Defendant fails to see the seriousness of this offense, Congress certainly has not.

This Defendant—a married, 37 year old man with children of his own—spent hours upon hours psychologically abusing a child into thinking that he loved her, that he was going to be with her forever, and that they were in a romantic relationship, all for the purpose of his own sexual gratification.

### (1)  Grooming MV-1

Defendant lied to told MV-1 about his true age, telling her he was about ten years younger.  Defendant called MV-1 "my wife."  He begged her for sexually explicit pictures by trying to convince her that he was going to be with her forever.  And, while the United States agrees that no evidence exists to suggest Defendant traveled to Michigan to see MV-1, he certainly told her that he was coming up here.  ("And I will see [your private parts] when we meet in real life.").  ("Remember that a few months before you finish your last grade, I gotta go see you. . . . Like if you start driving like when you be in 10 or 11 grade, we don't gotta wait that long.").  Defendant promised MV-1 that together, they would approach MV-1's parents and "they will start to accept me little by little."   And while Defendant told MV-1 they would be together when she finished school, he also kept her hopes up by giving her alternatives.  For example, while he said they'd need to wait until MV-1 was done with school, he added, "unless it is an emergency  . . . but so you know like if you really deeply beg me all crying and stuff like that then maybe."

Defendant knew this child was particularly vulnerable, as he knew she came from a very strict, religious home, where the customs enforced did not allow for any sort of "online dating."[3]  And perhaps that motivated him to continue to work on her

---

[3] Not that any normal household would allow a 14 year old child to engage in sexually explicit chats with a 37 year old married man, but particularly here, this child's upbringing became a topic of conversation with Defendant, so he was acutely aware of her naiveté.

inhibitions. ("We definitely the cutest and an amazing sweet couple.") ("Nite nite my gorgeous, precious, sweet, adorable, lovable, beautiful, most attractive amazing Queen").

### (2) Manipulation by isolating her and demanding her attention

This was the promise that Defendant made MV-1 repeat: "focus on school and school only so we can be together and whatever I do I put myself in your shoes so I don't do anything wrong and never be friendly, because I have you now, and am not single anymore." Defendant made it clear that MV-1 should not have any communications with other boys.

Defendant skewed the "relationship" by maintaining power and authority over MV-1. He "tested" her loyalty and love by asking questions aimed at certain responses. He scolded her. ("you are showing me you are acting like [a child] like I feel like a dad talking to this kid over and over again to make sure it doesn't happen again . . . ."). Defendant required MV-1 to text him first thing in the morning, late into the night, and even during the school day. If MV-1 failed to frequently send him messages, he chastised her. ("And I still don't see the excuse why you didn't KIK me . . . now you starting to act like a child full of excuses.") ("Don't argue with me. Don't challenge me. Do as I say. I'm your husband, your man."). When MV-1's grades started falling, Defendant warned her that, "I want nothing else added that will take some time from you to me."

Defendant built a wall between MV-1 and her family. He criticized her parents for wanting her to eventually marry someone in their culture. ("Like it really bothers me a lot that a parent can teach and make their kids just to accept their own kind when it comes to love."). He condemned their discipline decisions as unfair and unnecessary. This further isolated MV-1 from her surroundings, making it easier and easier for Defendant to draw her into his online sexual misconduct.

Defendant also manipulated MV-1 through cycles of guilt. ("I keep writing and writing and I see you are not trying to answer me . . . ."). ("You are hurting and confusing and making me feel really bad . . . What are you doing to me! You want to kill me! What have I done to you to deserve this!"). His behavior knew no boundaries. ("Are you waiting for me to get a heart attack or die or something to then think and start acting and start treating me the way you are supposed to be . . . ?"). And why is Defendant so angry at MV-1 so frequently? Because she does not want to send him sexually explicit images of herself. And she desperately loves Defendant and wants to please him, so she eventually gives in and sends him photos of her vagina.

### (3)  Introducing her to sexual concepts for his pleasure

The entire purpose of Defendant's communications with MV-1 concerned his own sexual excitement. He attempted to prime MV-1. ("I want you in flesh and blood right now at this moment. I want us to start now. Sleep together."). He made

her watch pornographic videos, telling her to pretend that "it's me and you and that's how I want to see us." Then, he became incredibly graphic in his descriptions: "Baby my dick is so hard and looks so wet and fat. Baby I'm now sticking my dick in you. I'm not wearing any protection so you can definitely get pregnant. Baby please pass your middle finger on your clit the tip I know and rub it slow. Then start going fast, and don't stop, plzzz." This behavior continued, over and over again Day after day, night after night, Defendant engaged MV-1 in graphic descriptions of the sexual encounters he desired with her – not when she turned adult – but her, as a 14 year old child. ("Baby will you let me take your shorts off, just so I can see how that pussy looks?").

And when he was caught – he presented MV-1's mother with a pack of lies. MV-1's mother took over MV-1's account and told Defendant that she was reporting his behavior to police. He responded by trying to convince her that they went to the same school together, and he only talked with her because she started talking to him first. He continued to pretend that he was a child, stating that "I understand that we can't think of being a couple until she and I be [sic] adults and of course finish school."

Undoubtedly, this is a serious offense, as evidenced by Congress' statutory mandate of ten years' imprisonment, and with a statutory maximum of life in prison.

Not every statute carries the possibility of life in prison. It is reserved for the most serious of offenses – those that greatly harm victims.

### B. History and characteristics of the defendant

Torres is a 39 year old man. He is relatively healthy, intelligent, and bears no childhood trauma. In assessing the entire history and characteristics of this defendant, there is nothing that would warrant movement from the guidelines in either direction. A sentence of 135 - 168 months is appropriate.

Defendant argues that he will likely be deported upon completion of his sentence, which represents a collateral damage that other Defendants in these types of cases do not face. But this cuts both ways. If he is deported, he will have no supervised release term. No one will supervise his work, living conditions, electronics, or anything else. He will be able to purchase a firearm. He will be able to vote. And, he will not be a registered sex offender in another country. *See Nichols v. United States*, 136 S. Ct. 1113 (2016). In other words, if he remains in the United States, his consequences will continue while spending at least five years on supervised release, and he will be prohibited from certain privileges for the rest of his life. But if he goes to another country, he will face no such consequences. This fact should be considered by this Court in choosing an appropriate punishment.

### C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

As discussed, this is a serious offense. And Defendant should be punished accordingly. These children are particularly vulnerable because individuals like Defendant have easy access to them by joining in on their video games, and downloading applications that are almost exclusively used by younger children, such as KIK and oovoo, the applications used in this offense.

As a society, we have set certain standards of conduct by which we must conduct ourselves. Particularly when it comes to protecting our children, we have decided, as a matter of law, that this kind of behavior is strictly prohibited. A sentence within the guideline range would reflect the seriousness of this offense, promote respect for the law, and provide just punishment.

### D. Adequate deterrence and protection of the public.

Deterrence is a key component in discouraging future criminal behavior and protecting the public. Torres presented numerous letters to this Court from his friends and family. Most certainly, they are hurting. But Torres is directly responsible for the reason his children miss him. He had plenty of opportunity to be a father to these children. Instead, he decided to spend his time manipulating a young girl into fulfilling his sexual fantasies. In his memorandum, Defendant makes reference that he was separated from his wife during the time period in the indictment. But that is not what he told law enforcement. Back in 2016, he told the

FBI that he and his wife have had marriage problems but they have stayed together for the children. Regardless, even if he and his wife were not living together during the criminal offense conduct, his criminal behavior undoubtedly crossed into times where he supposed to be caring for his children. As his wife wrote to this Court: "he took care of everything!!!" Additionally, his eldest daughter falls in the same age range as that of his sexual interest. To the government's knowledge these children have not been forensically interviewed.

The amount of time, energy, and effort Torres invested in this crime is quite extensive. And while Torres's family may have been hurt by Torres's actions, an entirely different family – the victim of this crime, and her family – must endure a pain that was thrust upon them by this Defendant's selfish acts. And the damage to MV-1 and her family will last forever. This defendant needs to be deterred.

### E. Kinds of sentences available and the need to avoid unwarranted sentencing disparities.

A guideline sentence in this case fits comfortably within the range of sentences that similarly situated defendants receive. Indeed, the guideline range is the starting point for determining a defendant's sentence. And Torres's case presents no reason to vary from the agreed-upon guidelines in this case.

## III. Conclusion

The government recommends a sentence of **135-168 months**' imprisonment.

                                            Respectfully submitted,

                                            MATTHEW SCHNEIDER,
                                            United States Attorney

                                            <u>s/Margaret M. Smith</u>
                                            Assistant United States Attorney
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI  48226
                                            Phone:  (313) 226-9135
                                            E-Mail: margaret.smith@usdoj.gov
                                            Bar No. P71413

Dated:  March 5, 2018

**Certificate of Service**

I hereby certify that on March 5, 2018, I electronically filed the Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following via electronic mail:

Richard Helfrick
Attorney for Defendant
Richard_helfrick@fd.org

s/Margaret M. Smith
MARGARET M. SMITH (P71413)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9135
E-Mail: margaret.smith@usdoj.gov